UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FLOODBREAK, LLC,<br>    Plaintiff,<br><br>          v.<br><br>DIEGO TRUST, LLC, et al.,<br>    Defendants. | No. 3:22-cv-840 (SRU) |

## RULING ON PRELIMINARY INJUNCTIVE RELIEF

This case is ancillary to *FloodBreak v. Art Metal Industries, et al.*, Dkt. No. 18-cv-503, a patent infringement matter FloodBreak LLC ("FloodBreak") prosecuted against Art Metal Industries ("AMI") and its chief executive and alleged alter egos Kevin Biebel ("Biebel") and Diego Trust, LLC ("Diego"). The matter settled last August and FloodBreak brought this separate action seeking to recover the $17,811,202 stipulated judgment. FloodBreak sues Biebel, Diego, and several individuals and entities that are alleged instrumentalities, or acting in concert with, the judgment debtors: Paraiso 2, LLC ("Paraiso"), Yvonne Hermina-Biebel ("Hermina-Biebel"), Low Country-1 Investment, LLC ("Low Country"), and Javier Velez ("Velez"). The fourth amended complaint, predicated on theories of alter ego liability, alleges six counts of fraudulent transfer.

FloodBreak moved for preliminary injunctive relief to prevent the defendants from continuing their alleged fraudulent transfer of certain assets and to obtain an accounting of the entities' assets. For the following reasons, I **grant** FloodBreak's Motion for a Preliminary Injunction, **doc. no. 76**.

I.      **Standard of Review**

Federal Rule of Civil Procedure 65(a) gives district courts the power to grant preliminary injunctions with notice to the adverse party. Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Con. Ed. Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (cleaned up); *see also Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Second Circuit applies similar standards in reviewing motions for temporary restraining orders and preliminary injunctions, and district courts have likewise "assumed them to be the same." *See Foley v. State Elections Enf't Comm'n*, No. 3:10CV1091 (SRU), 2010 WL 2836722, at *3 (D. Conn. July 16, 2010) (cleaned up). A movant must establish "a threat of irreparable injury" and either (1) "a probability of success on the merits" or (2) "sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Id.* (cleaned up) (quoting *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 2d 107, 108 (D. Conn. 2005)).

"The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "Because the moving party must not only show that there are serious questions going to the merits, but must additionally establish that the balance of hardships tips *decidedly* in its favor, its overall burden is no lighter than the one it bears under the likelihood of success standard." *Id.* (cleaned up).

Federal Rule of Civil Procedure 52(a)(2) requires a court to explicitly state its findings and conclusions when denying or granting a preliminary injunction. *Fair Hous. in Huntington*

*Comm. v. Town of Huntington*, 316 F.3d 357, 364 (2d Cir. 2003) (citing Fed. R. Civ. P. 52(a)). The Second Circuit "recognize[s] the practical limitations on the level of detail and completeness of findings at such a preliminary stage in the proceedings," and such findings "are not conclusive." *Id.* (quoting *Visual Scis., Inc. v. Integrated Commc'ns*, 660 F.2d 56, 58 (2d Cir. 1981)).

## II.   Background

I assume the parties' familiarity with the underlying patent infringement action[1] ("Patent Action") and the present action. I wrote in detail about the background of both lawsuits in my ruling on the defendants' motions to dismiss, doc. no. 112.

### A. Allegations

In this case, FloodBreak alleges the defendants fraudulently transferred assets out of its reach and obstructed its ability to satisfy the $17,811,202 Patent Action judgment against Diego, Biebel, and AMI. Fourth Am. Compl. ("FAC"), Doc. No. 77 ¶ 1. FloodBreak claims that, to this day, the Patent Action defendants have not paid the judgment. Mot. for Prelim. Inj., Doc. No. 76 ¶¶ 54-55.

Biebel received notice on February 23, 2018 that FloodBreak was asserting a patent infringement claim against AMI. *Id.* ¶ 27. FloodBreak claims the following transfers are fraudulent. First, Biebel caused AMI to transfer at least $4,601,968.94 to Diego. *Id.*

Biebel organized Paraiso on January 30, 2018. *Id.* ¶ 13. Biebel transferred his interest in Paraiso on March 1, 2018 to his wife, Yvonne Hermina-Biebel, for no consideration. *Id.* ¶¶ 7b-7c; Am. Articles of Org., Doc. No. 85-2 at 7. Biebel caused Diego to transfer $672,921.90 to

---

[1] *FloodBreak, LLC v. Art Metals Industries, LLC, Kevin F. Biebel and Diego Trust, LLC*, Dkt. No. 3:18-cv-503-SRU.

Paraiso by wiring the funds to an escrow account at a law firm in South Carolina. FAC, Doc. No. 77 ¶ 28. The transfers occurred on February 28, 2018; March 5, 2018; and March 6, 2018 (the "Diego Cash Transfers"). *Id.* Paraiso used the Diego Cash Transfers to purchase two residential properties in Belair, Bluffton Township, Beaufort County, South Carolina (the "South Carolina Properties"). *See id.* ¶ 7a, 29.

Hermina-Biebel is the managing member of another LLC, Low Country. *Id.* ¶ 8. Low Country's only purpose is to act as a holding entity for Hermina-Biebel's South Carolina home. *Id.* ¶ 8e. Based on her alleged complete domination and control over Paraiso and Low Country, Hermina-Biebel caused Paraiso to fraudulently transfer title to the South Carolina Properties to Low Country for no consideration on April 18, 2022. *Id.* ¶ 31.

Real Steel, LLC ("Real Steel") was formed in 2007 with Hermina-Biebel as its sole member.[2] Real Steel owns substantial assets consisting of valuable classic automobiles and an extensive inventory of automobile parts located at the Biebels' New Milford residence. *Id.* ¶¶ 16-17.

On January 1, 2019, Diego transferred its sole membership interest in Real Steel to Velez—the "Initial Membership Transfer." Doc. No. 60 at 24. On November 22, 2020, Velez assigned ninety percent of his Real Steel membership interest to his mother, Hermina-Biebel, for no consideration—the "Subsequent Membership Transfer." *Id.* at 26. FloodBreak alleges the Initial and Subsequent Membership Transfers violate the Connecticut Uniform Fraudulent Transfer Act, §§ 52-552 et seq. ("CUFTA"). FAC, Doc. No. 77 at ¶¶ 56-71.

---

[2] *Business Lookup: Real Steel, LLC*, Conn. Sec'y of State, https://service.ct.gov/business/s/onlinebusinesssearch?language=en_US) ("Business Lookup: Real Steel").

B.  Procedural History

On July 5, 2022, FloodBreak sued defendants Diego, Paraiso, Biebel, and Hermina-Biebel.  Doc. No. 1.  The original complaint alleged claims of intentional fraudulent transfer against Diego and Paraiso under Conn. Gen. Stat. § 52-552e(a)(1); constructive fraudulent transfer against Diego and Paraiso under Conn. Gen. Stat. § 52-552f(a); intentional fraudulent transfer against Biebel and Hermina-Biebel under Conn. Gen. Stat. § 52-552e(a)(1); and constructive fraudulent transfer against Biebel and Hermina-Biebel under Conn. Gen. Stat. § 52-552f(a).  *See generally* Compl., Doc. No. 1.

On September 2, 2022, FloodBreak filed the Second Amended Complaint ("SAC").  SAC, Doc. No. 22.  The SAC added Low Country as a party defendant and a new claim of collapsing transactions as part of a fraudulent transfer scheme under Conn. Gen. Stat. § 52-552h(a)(C).  *See generally id.*

On October 12, 2022, defendants Diego, Biebel, Paraiso, Hermina-Biebel and Low Country moved to dismiss the SAC.  Docs. No. 31, 33, 35.  Paraiso later moved for summary judgment and filed an amended motion to dismiss, after obtaining leave to do so, which FloodBreak opposed.  Docs. No. 55, 61-63.

On December 31, 2022, FloodBreak filed a Third Amended Complaint ("TAC"), adding Javier Velez as a party defendant, new allegations concerning Velez and Real Steel, and three new claims.  Doc. No. 49.  On May 12, 2023, FloodBreak filed a Fourth Amended Complaint ("FAC" or "the operative complaint").  Doc. No. 77.  The FAC added more specificity to FloodBreak's alter ego allegations.  *See generally id.*  Paraiso, Low-Country, and Hermina-Biebel filed Rule 12(b)(2) and 12(b)(5) motions to dismiss the FAC for lack of personal

5

jurisdiction and insufficient service of process.[3]  Docs. No. 78, 80.  FloodBreak moved for preliminary injunctive relief the same day.  Doc. No. 76.  I held oral argument on that motion and the defendants' pending motions to dismiss on September 22, 2023, and took all motions under advisement.  Min. Entry, Doc. No. 97.  On March 1, 2024, I denied the defendants' motions to dismiss.  Doc. No. 112.

**III.   Discussion**

   A.   Personal Jurisdiction

Hermina-Biebel, Low Country, and Paraiso allege the Court lacks personal jurisdiction over them.  *See* Docs. No. 78, 80 (motions to dismiss for lack of personal jurisdiction).  On March 1, 2024, I concluded the Court has personal jurisdiction over Hermina-Biebel, Low Country, and Paraiso for the reasons set forth in my written opinion, doc. no. 112, and denied their motions to dismiss for lack of personal jurisdiction.  "Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under [the party's] control, whether the property be within or without the United States."  *United States v. First Nat'l City Bank,* 379 U.S. 378, 384 (1965).

   1.   *Nonparty Real Steel*

FloodBreak requests the Court to freeze the assets of Real Steel, LLC ("Real Steel").  Mot. for Prelim. Inj., Doc. No. 76 ¶ 3.  Real Steel is not a party to this action.  However, it is owned by Hermina-Biebel and Velez.  FAC, Doc. No. 77 ¶ 18; Doc. No. 60 at 26.  I thus may enjoin Hermina-Biebel and Velez from selling, transferring, reassigning, or otherwise disposing

---

[3] Paraiso states in its motion, doc. no. 78, that it moves to dismiss under Rule 12(b)(6) and sets forth the *Twombly* and *Iqbal* plausibility standard.  *Id.* at 1, 9-10.  Paraiso's memorandum of law, though, includes only personal jurisdiction and service of process arguments.  I assume counsel for Paraiso made a scrivener's error, perhaps because it first moved to dismiss under Rule 12(b)(6).  Doc. No. 33.

6

of their memberships in Real Steel, "property under [their] control." *United States v. First Nat'l City Bank,* 379 U.S. at 384.

I now turn to the preliminary injunction requirements.

### B. Irreparable Harm

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983)) (cleaned up). To demonstrate irreparable harm, a plaintiff must show "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (cleaned up).

FloodBreak obtained a stipulated judgment exceeding $17 million against AMI and Biebel that remains unpaid after five years of Patent Action litigation. Doc. No. 76 ¶¶ 12, 60. AMI and Biebel are allegedly insolvent after intentionally placing all assets beyond FloodBreak's reach. *Id.* at ¶¶ 54-55. FloodBreak believes the defendants will continue to move the assets to avoid satisfying that judgment. *Id.* at ¶ 56.

In *Black v. Owen*, No. 3:14-CV-23 (RNC), 2018 WL 806511 (D. Conn. Feb. 9, 2018), the defendant had failed to pay the plaintiff "any amount" owed under its consent judgment and "ha[d] a history of using LLCs to conceal his assets." *Id.* at *1-*2. The court reasoned "though irreparable harm typically means an injury for which a monetary award cannot be adequate compensation, an injunction may issue to stop a defendant from dissipating assets in an effort to frustrate a judgment[.]" *Id.* at *2 (cleaned up).

Based on the defendants' alleged behavior so far, a monetary judgment would be an insufficient remedy for FloodBreak. FloodBreak has an unsatisfied $17,811,202 judgment that the same defendants, and their alleged alter egos and insiders, have allegedly refused to pay. Mot. for Prelim. Inj., Doc. No. 76 ¶¶ 54-55. Without injunctive relief, the defendants may never pay the Patent Action judgment.

FloodBreak has demonstrated it faces irreparable injury in the absence of injunctive relief.

C. Balance of Hardships

I next turn to whether "a balance of hardships tip[s] decidedly toward" FloodBreak, "the party requesting the preliminary relief." *Citigroup*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

1. *Harm to the Defendants*

If granted, the asset-freezing preliminary injunction will simply require the defendants to maintain the status quo. Doc. No. 76 ¶ 59.

Hermina-Biebel avers that she would be harmed by an asset-freezing injunction because, with regards to the 24 Belmeade property, "[h]er interest in Low Country is her single most valuable asset. The proposed injunction will prevent Hermina-Biebel from taking any financial action regarding Low Country and her [24 Belmeade] residence." Doc. No. 79 at 4. Low Country avers the same harm; its only asset is the 24 Belmeade residence. *Id.* at 6.

An asset-freezing injunction would merely require Low Country and Hermina-Biebel to hold onto assets they have no present intention of selling. *See* Hearing Tr., Doc. No. 98 at 55:3-4 ("[Hermina-Biebel] does not have a current plan to sell the property."). Even Hermina-Biebel acknowledges that Low Country's only purpose is to act as a *holding* entity for her South

8

Carolina home.  Hermina-Biebel Aff., Doc. No. 31 at 4 ¶ 14.  Hermina-Biebel and Low Country would suffer little harm from an asset-freezing injunction.

Alternatively, some defendants argue an injunction is unnecessary because they own or control few assets.  Velez avers an injunction would be "especially pointless and improper" because "Velez only owns 10% of the membership in Real Steel."  Doc. No. 82 at 2.  Hermina-Biebel disputes FloodBreak's claim that she received $100,000 of the proceeds from the sale of the 28 Belmeade property.  *See* Doc. No. 79 at 5.  Hermina-Biebel fails to specify how could be *harmed* from injunctive relief; if she does not hold the $100,000 proceeds from the 28 Belmeade property sale, she will not be harmed if the $100,000 28 Belmeade proceeds are frozen.

Assuming the defendants' arguments are correct, Hermina-Biebel and Velez own relatively little interest in FloodBreak's judgment.  They accordingly will only be slightly prejudiced if I grant injunctive relief. *See Black v. Owen*, 2018 WL 806511, at *3 (D. Conn. Feb. 9, 2018) ("if [the defendant] does in fact have no assets, as he has consistently represented, he will not be prejudiced by a restraining order.").

2.  *Harm to FloodBreak*

FloodBreak claims the defendants' fraudulent transfers have impeded its ability to satisfy its $17,811,202 Patent Action judgment.  Doc. No. 86 at 2.  FloodBreak faces the continuous risk that the defendants will repeatedly and fraudulently transfer assets out of its reach.  *Cf. Black v. Owen*, 2018 WL 806511 at *3 ("The balance of hardships is in plaintiffs' favor: [the defendant] has paid nothing to satisfy the 2009 judgment and appears to be in violation of the 2016 judgment, which required him to make good faith attempts to pay plaintiffs.").

On balance, the hardships are in FloodBreak's favor.

9

D. Public Interest

Finally, I weigh whether the public interest would "be disserved by the grant of a preliminary injunction." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).

"The public has an interest in the enforcement of judgments." *Black v. Owen*, 2018 WL 806511 at *3 (quoting *State Farm Mut. Auto. Ins. Co. v. Am. Rehab And Physical Therapy, Inc.*, 376 F. App'x 182, 184 (3d Cir. 2010)). "It is in the public interest that entities meet obligations to creditors and other stakeholders, and it is in the public interest that commercial obligors not dissipate their assets—or, when they have already done so, that they not do it again." *In re Soundview Elite Ltd.*, 543 B.R. 78, 120 (Bankr. S.D.N.Y. 2016); *id.* (finding an asset-freezing injunction appropriate).

FloodBreak merely seeks to enforce its Patent Action judgment against parties who it alleges received fraudulent transfers that should have been used towards the judgment and who will avoid satisfying the judgment through further fraudulent means. The public will not be "disserved by the grant of a preliminary injunction"; it is in the public's best interest for me to grant injunctive relief. *WPIX, Inc.*, 691 F.3d at 287.

E. Accounting

FloodBreak seeks "[a]n accounting of all funds received by Diego from AMI, including the funds used to make the Diego Cash Transfers, and the use or disposition thereof by Diego[.]" FAC, Doc. No. 77 ¶ R; *see also* Mot. for Prelim. Inj., Doc. No. 76 ¶ 27. FloodBreak alleges Diego fraudulently transferred the Diego Cash Transfers to Hermina-Biebel, Paraiso, Low Country, and Velez. *See generally* FAC, Doc. No. 77. FloodBreak's accounting request in its fourth amended complaint accordingly extends to those defendants.

District courts have the authority to order an accounting of wrongly gained assets. *Gucci Am., Inc. v. Weizing*, 768 F.3d 122, 131-32 (2d Cir. 2014). An accounting "is minimally intrusive" when balanced against FloodBreak's allegations that the defendants have fraudulently held and transferred assets payable toward FloodBreak's Patent Action judgment. *See S.E.C. v. Bremont*, 954 F. Supp. 726, 733 (S.D.N.Y. 1997) (ordering an accounting of over $2 million that the defendants improperly obtained from investors). I conclude a verified accounting of the defendants' assets is necessary to give the Court and FloodBreak a comprehensive picture of the alleged fraudulent transfers, and to help ensure the assets are not fraudulently transferred again.

F.  Security or Bond

The defendants request FloodBreak to post a bond if the Court grants injunctive relief. FloodBreak asserts that no security or bond is necessary because the defendants have not established how they could suffer damages stemming from the injunction. Doc. No. 76 ¶¶ 65-66.

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In the Second Circuit, a bond is not always required for preliminary injunctions. *Colgan Fin. Grp., Inc. v. First 100, LLC*, No. 3:14-CV-01254 (VLB), 2014 WL 12748082, at *1 (D. Conn. Dec. 22, 2014) (citing *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)). If a defendant fails "to adequately substantiate the amount" of a potential loss if they are wrongfully enjoined, a district court must not require the plaintiff to post a bond, especially when the party seeking injunctive relief asks the court to maintain the status quo. *Id.* at *2.

In Paraiso's objection, it vaguely states that an asset-freezing injunction would be over-broad and punitive. Doc. No. 82 at 1. Velez claims injunctive relief would be "pointless"

11

because Velez only owns 10% membership interest in Real Steel and cannot harm the plaintiff in any meaningful way. Doc. No. 82 at 2. Neither party provided details of how they would be harmed by injunctive relief, or how they would suffer damages. Hermina-Biebel and Low Country claim a bond is necessary because a preliminary injunction would restrain Low Country's only asset and Hermina-Biebel's largest asset without giving them the freedom to react to the fluctuating housing market and mortgage interest rates. Doc. No. 79 at 6. However, Hermina-Biebel and Low Country have no current plan to sell the South Carolina property. Hearing Tr., Doc. No. 98 at 55:3-4.

I am not convinced the defendants require a security or bond to be protected from an asset-freezing injunction. Accordingly, I do not require FloodBreak to post a security or bond.

### IV.    Conclusion

For the reasons set forth above, FloodBreak's motion for a preliminary injunction against defendants Diego Trust, LLC, Paraiso 2, LLC, Kevin Biebel, Yvonne Hermina-Biebel, Low Country-1 Investment, LLC, and Javier Velez, **doc. no. 76**, is **granted**.

### PRELIMINARY INJUNCTION ORDER

**IT IS HEARBY ORDERED**, pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, that:

1. Yvonne Hermina-Biebel and Low Country-1 Investment, LLC, their agents and assigns are prohibited and enjoined from selling, assigning, transferring, encumbering, or otherwise disposing of the 24 Belmeade Drive Property;

2. Yvonne Hermina-Biebel is prohibited and enjoined from selling, assigning, transferring, encumbering, or otherwise disposing of her membership interest in Paraiso 2, LLC and any of the assets of Paraiso 2, LLC and including, but not limited to the Sale Proceeds;

3. Yvonne Hermina-Biebel is prohibited and enjoined from selling, assigning, transferring, encumbering, or otherwise disposing of her membership interest in Low Country-1 Investment, LLC and any of the assets of Low Country-1 Investment, LLC;

4. Yvonne Hermina-Biebel and Javier Velez are each prohibited and enjoined from selling, assigning, transferring, encumbering, or otherwise disposing of their membership interests in Real Steel, LLC and any of the assets of Real Steel, LLC;

5. The Defendants shall grant access to their books and records to the Plaintiff within forty-five (45) business days of the entry of this Order;

6. The Plaintiff is relieved from posting any bond or security pursuant to Federal Rule of Civil Procedure 65(c);

7. This Order shall be effective immediately upon entry;

8. The Court retains jurisdiction over this Order and the relief granted herein.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of March 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge